1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ERIN ASHLEY SAULS,                        No.  2:24-cv-03164-DAD-AC

12              Plaintiff,

13        v.                                   ORDER DENYING PLAINTIFF'S MOTION
                                               TO REMAND, GRANTING DEFENDANT'S
14   COMPUTERSHARE INC.,                       MOTION FOR JUDGMENT ON THE
                                               PLEADINGS, DISMISSING PLAINTIFF'S
15              Defendant.                      COMPLAINT WITH LEAVE TO AMEND,
                                               AND DENYING DEFENDANT'S MOTION
16                                             TO STRIKE

17                                             (Doc. Nos. 7, 15)

18

19

20          This matter is before the court on defendant's motion for judgment on the pleadings and

21   plaintiff's motion to remand this action to the Sacramento County Superior Court.  (Doc. Nos. 7,

22   15.)  The pending motions were taken under submission on the papers on April 21, 2025.  (Doc.

23   No. 23.)  For the reasons explained below, the court will deny plaintiff's motion to remand and

24   grant defendant's motion for judgment on the pleadings.

25                                    **BACKGROUND**

26          On September 26, 2024, plaintiff Erin Sauls filed a complaint in the Sacramento County

27   Superior Court on behalf of herself and other similarly situated individuals against defendant

28   Computershare Inc.  (Doc. No. 1-4 at 6.)  In her complaint, plaintiff alleges as follows.

                                            1

Defendant employed plaintiff as an employee in Sacramento County. (*Id.* at ¶ 13.)[1] Plaintiff typically worked more than eight hours per day, five days per week. (*Id.*) Defendant "maintained a systematic, company-wide policy and practice of" committing various wage and hour violations. (*Id.* ¶ 4.) For example, defendant failed to pay plaintiff for all of the hours that she worked including overtime and minimum wages. (*Id.* at ¶ 14.) Additionally, defendant "sometimes, but not always," required plaintiff to work over five consecutive hours in a single shift without providing her with a mandatory 30-minute meal period. (*Id.* at ¶ 16.) Plaintiff also "sometimes, but not always," was required to work over four consecutive hours in a single shift without a mandatory 10-minute rest period. (*Id.* at ¶ 17.) Plaintiff incurred various business expenses in direct discharge of her duties for which she received no reimbursement. (*Id.* at ¶ 18.) Defendant furnished deficient wage statements which omitted "all applicable hourly rates," "all gross and net wages earned," and defendant's address. (*Id.* at ¶ 20.) Defendant also willfully failed and refused to pay plaintiff all wages owed to her upon the conclusion of her employment, including: overtime wages, meal period premium wages, rest period wages, minimum wages, and her final paycheck. (*Id.* at ¶ 19.) "Plaintiff's experience working for Defendants was typical and illustrative." (*Id.* at ¶ 14.)

Based on these and other allegations, plaintiff asserts the following eight causes of action: (1) failure to pay minimum wages in violation of California Labor Code §§ 204, 1184, 1194.2, 1197; (2) failure to pay overtime compensation in violation of California Labor Code §§ 1194, 1198; (3) failure to provide meal periods in violation of California Labor Code §§ 226.7, 512; (4) failure to authorize and permit rest breaks in violation of California Labor Code § 226.7; (5) failure to indemnify necessary business expenses in violation of California Labor Code § 2802; (6) failure to timely pay wages at termination in violation of California Labor Code §§ 201, 202, 203; (7) failure to provide accurate itemized wage statements in violation of California Labor

/////

---

[1] Plaintiff does not allege the exact dates of her employment by defendant. (*See* Doc. No. 1-4.) However, defendant submits a declaration which reflects that defendant has employment data for plaintiff dating back to September 20, 2021. (Doc. No. 1-3 at 3.)

Code § 226; (8) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.* (Doc. No. 1-4 at ¶¶ 30–94.)

On November 12, 2024, defendant filed an answer to plaintiff's complaint in the Sacramento County Superior Court.  (Doc. No. 1-4 at 77.)  On November 14, 2024, defendant then removed this action to this federal court on the basis of diversity jurisdiction and the Class Action Fairness Act ("CAFA").  (Doc. No. 1.)  On December 19, 2024, defendant filed a motion for judgment on the pleadings.  (Doc. No. 7.)  On January 2, 2025, plaintiff filed an opposition to defendant's motion on January 2, 2025.  (Doc. No. 8.)  Defendant filed a reply in support of its motion for judgment on the pleadings on January 10, 2025.  (Doc. No. 10.)

On February 20, 2025, plaintiff filed her motion to remand this action back to the Sacramento County Superior Court.  (Doc. No. 15.)  On March 6, 2025, defendant filed an opposition to plaintiff's motion to remand.  (Doc. No. 18.)  Plaintiff filed her reply thereto on March 14, 2025.  (Doc. No. 19.)  Below, the court will first lay out the applicable legal standards and then address each of the pending motions in turn.

**LEGAL STANDARDS**

**A.    Diversity Jurisdiction Under CAFA**

Federal courts are courts of limited jurisdiction and have subject matter jurisdiction only where authorized by the Constitution and Congress.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Unless otherwise limited, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "Through CAFA, Congress broadened federal diversity jurisdiction over class actions . . . ."  *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 882 (9th Cir. 2013).

Under CAFA, federal courts have jurisdiction "over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592

1   (2013)).  "Congress designed the terms of CAFA specifically to permit a defendant to remove

2   certain class or mass actions into federal court."  *Ibarra v. Manheim Invs. Inc*., 775 F.3d 1193,

3   1197 (9th Cir. 2015).  "[N]o antiremoval presumption attends cases invoking CAFA."  *Dart*

4   *Cherokee*, 574 U.S. at 89.  However, "[t]he rule that a removed case in which the plaintiff lacks

5   Article III standing must be remanded to state court under § 1447(c) applies as well to a case

6   removed pursuant to CAFA as to any other type of removed case."  *Polo v. Innoventions Int'l,*

7   *LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (citing 28 U.S.C. § 1453(c)(1)).

8   **B.      Motion for Judgment on the Pleadings Under Rule 12(c)**

9          Federal Rule of Civil Procedure 12(c) provides that: "After the pleadings are closed—but

10  early enough not to delay trial—a party may move for judgment on the pleadings."

11         A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing

12  party's pleadings[.]"  *Morgan v. County of Yolo*, 436 F. Supp. 2d 1152, 1154–55 (E.D. Cal.

13  2006), *aff'd*, 277 F. App'x 734 (9th Cir. 2008).  In reviewing a motion brought under Rule 12(c),

14  the court "must accept all factual allegations in the complaint as true and construe them in the

15  light most favorable to the nonmoving party."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir.

16  2009).

17         The same legal standard applicable to a Rule 12(b)(6) motion applies to a motion brought

18  under Rule 12(c).  *See Dworkin v. Hustler Magazine, Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989).

19  Accordingly, "judgment on the pleadings is properly granted when, taking all the allegations in

20  the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of

21  law."  *Marshall Naify Revocable Tr. v. United States*, 672 F.3d 620, 623 (9th Cir. 2012) (quoting

22  *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)); *see also Fleming*, 581 F.3d

23  at 925 ("judgment on the pleadings is properly granted when there is no issue of material fact in

24  dispute, and the moving party is entitled to judgment as a matter of law").  The allegations of the

25  complaint must be accepted as true, while any allegations made by the moving party that

26  contradict the allegations of the complaint are assumed to be false.  *See MacDonald v. Grace*

27  *Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006).  The facts are viewed in the light most

28  favorable to the non-moving party and all reasonable inferences are to be drawn in favor of

1    that party.  See *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 360 (9th

2    Cir. 2005).

3           Courts have discretion both to grant a motion for judgment on the pleadings with leave to

4    amend or to simply dismiss causes of action rather than grant judgment as to them.  *Lonberg v.*

5    *City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations omitted); *see also Pac. W.*

6    *Grp. v. Real Time Sols., Inc.*, 321 Fed. App'x 566, 569 (9th Cir. 2008);[2] *Woodson v. State of*

7    *California*, No. 2:15-cv-01206-MCE-CKD, 2016 WL 524870, at *2 (E.D. Cal. Feb. 10, 2016).

8    Generally, dismissal without leave to amend is proper only if it is clear that "the complaint could

9    not be saved by any amendment."  *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir.

10   2007) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)); *see also Ascon Props.,*

11   *Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the

12   amendment of the complaint . . . constitutes an exercise in futility").

13   **C.    Motion to Strike Under Rule 12(f)**

14          Federal Rule of Civil Procedure 12(f) permits a district court to strike from a pleading

15   "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The

16   function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise

17   from litigating spurious issues by dispensing with those issues prior to trial."  *Whittlestone, Inc. v.*

18   *Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted).  "[S]triking the pleadings

19   is considered 'an extreme measure,' and Rule 12(f) motions are, therefore, generally 'viewed with

20   disfavor and infrequently granted.'"  *Fernandez v. CoreLogic Credco, LLC.*, 593 F. Supp. 3d 974,

21   994 (S.D. Cal. Mar. 25, 2022) (citation omitted).  Thus, motions to strike "should not be granted

22   unless it is clear that the matter to be stricken could have no possible bearing on the subject

23   matter of the litigation."  *Figueroa v. Kern County*, 506 F. Supp. 3d 1051, 1056 (E.D. Cal. 2020)

24   (citation omitted).  A decision whether to strike certain material is committed to the sound

25   discretion of the district court.  *Whittlestone*, 618 F.3d at 973.

26   /////

27   _____

28   [2]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1

**DISCUSSION**

2

**A.    Motion to Remand**

3        Defendant removed this action to this federal court pursuant to CAFA contending that the

4    parties are minimally diverse, there are at least 100 putative class members, and the amount in

5    controversy is $10,623,538.  (Doc. No. 1 at 23, 30, 31.)  In her pending motion to remand,

6    plaintiff argues that defendant has failed to satisfy its burden of establishing that the amount in

7    controversy exceeds $5 million.  (Doc. No. 15 at 10.)

8        "To remove a case from a state court to a federal court, a defendant must file in the federal

9    forum a notice of removal containing a short and plain statement of the grounds for removal."

10   *Dart Cherokee*, 574 U.S. at 83.  That notice "need not contain evidentiary submissions."  *Id.* at

11   84.  A removing defendant may use "a chain of reasoning that includes assumptions" in

12   calculating the amount in controversy.  *Ibarra*, 775 F.3d at 1199.  However, "those assumptions

13   cannot be pulled from thin air" and "need some reasonable ground underlying them."  *Id.*

14   "Reasonable grounds may be established on the basis of the complaint and extrinsic evidence."

15   *Tercero v. C&S Logistics of Sacramento/Tracy LLC*, No. 24-cv-00963-DC-JDP, 2024 WL

16   4826348, at *5 (E.D. Cal. Nov. 19, 2024) (internal quotation marks and citation omitted).

17       "What makes an assumption reasonable may depend on which element of the amount-in-

18   controversy calculation is at issue."  *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025).

19   For example, when the number of employees in a wage and hour class action is in dispute, it

20   "may make sense to expect a defendant to introduce evidence" of that number because it can

21   easily be "determined by examining the defendant's employment records."  *Id.*  In contrast, "it

22   makes little sense to require a CAFA defendant to introduce evidence of the violation rate—

23   really, the alleged violation rate—because the defendant likely believes that the real rate is zero

24   and thus that the evidence does not exist."  *Id.*  In these instances, "a CAFA defendant can most

25   readily ascertain the violation rate by looking at the plaintiff's complaint."  *Id.* (emphasis

26   omitted).

27   /////

28   /////

6

1        1.      Amount in Controversy

2        The parties do not dispute that the putative class in this case exceeds 100 members and

3   that there is minimal diversity.  (Doc. Nos. 1, 15, 18, 19.)  The sole dispute on the pending motion

4   to remand is whether the amount in controversy exceeds $5 million.  Plaintiff argues that

5   defendant has failed to satisfy the amount in controversy because "Defendant recites Plaintiff's

6   allegations from the operative complaint, and then, without any basis, concludes that those

7   allegations will eventually result in an amount over the jurisdictional minimums."  (Doc. No. 15

8   at 10.)  Defendant responds that the amount in controversy requirement is satisfied here because it

9   "applied conservative, reasonable, and well-established violation rates" to demonstrate that the

10  complaint places more than $5 million into controversy.  (Doc. No. 18 at 6.)

11       In support of its notice of removal, defendant relies upon two declarations:  one from

12  Zachary Minute ("Minute") a data analytics manager for defendant's counsel of record, and the

13  other from George Theofanis ("Theofanis"), counsel of record for defendant.  (Doc. Nos. 1-3, 1-

14  4.)  In his declaration, Minute reviewed:  "(1) data received from Computershare pertaining to

15  Plaintiff who is working for Computershare within the State of California from September 20,

16  2021 to present; and (2) data received from Computershare pertaining to all hourly non-exempt

17  employees who worked for Computershare within the State of California at any time during the

18  period beginning September 26, 2020, to [October 31, 2024.]"  (*Id.* at 3.)  That data purportedly

19  revealed plaintiff's "daily time punch and pay data" and the putative class pay data.  (*Id.*)  Minute

20  asserts that he has personal knowledge of the facts set forth in his declaration.  (*Id.* at 2.)  His

21  review of defendant's employment data revealed that there are 194 putative class members who

22  worked 95,455 shifts exceeding five hours, 19,091 workweeks, and 4,598 months.  (*Id.* at 6–7.)

23  There were 49 class members who worked 904 biweekly payroll periods during the wage

24  statement period, 115 class members who separated from employment between September 26,

25  2021 to October 31, 2024, and all class members earned an average hourly pay rate of $26.49.

26  (*Id.* at 6–8.)  His review further concluded that plaintiff worked 686 shifts during the relevant

27  period, 673 shifts exceeded 3.5 hours, 654 shifts exceeded five hours, there were 23 biweekly

28  /////

1  payroll periods during from September 26, 2023 to October 31, 2023, 137.2 workweeks, 38

2  months, and an average hourly pay rate of $26.44.  (*Id.* at 4–5.)

3        In his declaration, Theofanis reviewed the U.S. Bureau of Labor Statistics Consumer

4  Index reports on the average monthly internet costs, average monthly cost for wireless telephone

5  services, and average monthly cost for "computers, peripherals, and smart home assistants"

6  between September 2020 and September 2024.  (Doc. No. 1-4 at 3–4.)  His review of the reports

7  revealed that the average monthly internet cost was $82.00 per month, the average monthly

8  wireless telephone services was $47.84 per month, and the average monthly cost for computers,

9  peripherals, and smart home assistants was $38.01.  (*Id.* at 3–4.)  The total cost for these expenses

10  was $167.85.  (*Id.* at 4.)  Theofanis asserts that he has personal knowledge of the facts set forth in

11  his declaration.  (*Id.* at 2.) [3]

12              a.    *Meal Period Claim*

13        For the meal period violations claim, defendant argues that plaintiff's complaint places

14  $1,571,162 into controversy.  (Doc. No. 1 at 26.)  To reach this number, defendant assumes that

15  the putative class suffered three out of five meal period violations per week—meaning a 60%

16  violation rate—then multiplies three by the total number of workweeks that the putative class

17  /////

18  /////

19

20  [3]  Plaintiff does not assert that either declaration submitted by defendant provides a deficient basis
upon which to calculate the amount in controversy.  (Doc. Nos. 15, 19.)  Nonetheless, the court
notes that it is appropriate for defendant to rely upon the declarations of individuals who do not
21  work directly for its company in calculating the amount in controversy.  *See Mejia v. DHL
Express (USA), Inc.*, No. 15-cv-00890-GHK-JC, 2015 WL 2452755, at *3 n.2 (C.D. Cal. May 21,
22  2015) (concluding declaration from defense counsel in support of its amount in controversy
sufficient since "Defendant's employees provided company records to counsel, and he had
23  personal knowledge of these records after reviewing them."); *Bermejo v. Lab'y Corp.*, No. 20-cv-
05337-DMG-SK, 2020 WL 6392558, at *3–4 (C.D. Cal. Nov. 2, 2020) (finding a declaration
24  from defense counsel who relied upon data prepared from defendant's HR analyst to calculate the
number of class members, average hourly pay rate, and total number of days worked to be
25  sufficient); *Enomoto v. Siemens Indus., Inc.*, No. 22-56062, 2023 WL 8908799, at *2 (9th Cir.
26  Dec. 27, 2023) ("A defendant is permitted to rely on a declaration from an individual who has
reviewed relevant employee payroll and wage data to support its amount in controversy
27  allegations.").  Accordingly, the court concludes that both declarations provide a sufficient basis
upon which defendant can calculate the amount in controversy.

28

worked throughout the statutory period and by the average hourly pay rate for the class.[4]  (*Id.*)  In response, plaintiff argues that defendant improperly assumed that "100% of the non-exempt employees will allege three meal period . . . . violations for all workweeks" and that the meal period violations "persisted throughout the duration of their employment within the statutory period."  (Doc. No. 15 at 17.)

In her complaint, plaintiff alleges that "Defendants regularly failed to provide Plaintiff and the Class with both meal periods as required by California law."  (Doc. No. 1-4 at ¶ 51.)  She also alleges that defendant had a "policy and practice" of "sometimes, but not always," withholding meal breaks during shifts where the class worked more than five hours.  (*Id.* at ¶ 16.)  Finally, she alleges that "Plaintiff and the Class were sometimes required to work during their meal periods, leading to the failure to provide uninterrupted meal periods."  (*Id.*)

As one district court has stated:  "Whether the alleged violations occur from time to time, as a matter of pattern and practice, or uniformly, as alleged in the complaint, has a significant impact on the amount in controversy calculation."  *Cocroft v. EquipmentShare.com Inc.*, No. 24-cv-00645-BAS-AHG, 2024 WL 3877274, at *7 (S.D. Cal. Aug. 19, 2024).  For "pattern and practice" allegations, "courts in the Ninth Circuit . . . . have found a 25% violation rate or higher to be reasonable as applied to meal and rest break claims."  *La Grow v. JetBlue Airways Corp.*, No. 24-cv-00518-ODW-SK, 2024 WL 3291589, at *4 (C.D. Cal. July 3, 2024) (citation omitted); *Elizarraz v. United Rentals, Inc.*, No. 18-cv-09533-ODW-JC, 2019 WL 1553664, at *4 (C.D. Cal. Apr. 9, 2019) (finding a 50% violation rate reasonable in light of plaintiff's "pattern and practice" allegations); *Sanchez v. Abbott Lab'ys*, No. 20-cv-01436-TLN-AC, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021) (finding a 60% violation rate reasonable).  Moreover, courts have deemed a 60% violation rate to be a reasonable assumption when the plaintiff alleges that the defendant "sometimes, but not always, violated meal break protections.  *Powell v. USI Ins. Servs., LLC*, at *4, No. 2:23-cv-04129-ODW-BFM, 2023 WL 6276578, at *4 (C.D. Cal. Sept. 25, 2023)

---

[4]  Defendant employs the following formula:  "((19,091 * 3) * $26.44 = $1,517,162)."  (*Id.*)  This calculation is verified in the Minute declaration where he reaches this same number by multiplying the number of meal period eligible shifts by 0.6, then multiplies that number by the average hourly pay rate for the putative class.  (Doc. No. 1-3 at 11.)

1   (concluding that a 60% violation rate was reasonable since the plaintiff had alleged that defendant

2   "'sometimes, but not always,' violated meal period" laws).  Here, plaintiff alleges that defendant

3   "sometimes, but not always" violated meal break protections, and that it was defendant's "policy

4   and practice" to withhold meal periods.  (Doc. No. 1-4 at ¶ 16.)  Based on these allegations and in

5   light of the authority cited above, defendant's assumption that the putative class missed three out

6   of five meal periods per week—which amounts to a 60% violation rate—is reasonable.

7        Plaintiff contends that defendant has failed to provide any "extrinsic evidentiary support"

8   for its meal period calculations.  (Doc. No. 15 at 19.)  This is simply incorrect.  Minute's

9   declaration identified the exact number of shifts that the putative class worked throughout the

10  class period exceeding five hours.  (Doc. No. 1-3 at 6) (emphasis omitted) ("Based on my review

11  of the Class Records, I determined that the putative class members collectively worked 95,455

12  shifts during the Relevant Period lasting at least 5.01 hours in length.").  This type of data

13  provides a reasonable basis upon which to calculate meal period violations.  *See Martinez v.*

14  *Cencora, Inc.*, No. 24-cv-02663-MRA-SHK, 2025 WL 1443021, at *3 (C.D. Cal. May 20, 2025)

15  (finding it reasonable for defendant to use all shifts lasting longer than five hours throughout the

16  class period in calculating the meal period amount in controversy).  Accordingly, the court

17  concludes here that defendant's calculation is reasonable.

18        The court is also unpersuaded by plaintiff's argument that a defendant must show that

19  meal period violations persisted throughout the entire statutory period.  Defendant is not required

20  to "comb through its records to identify and calculate the exact frequency of violations."  *Salcido*

21  *v. Evolution Fresh, Inc.*, No. 14-cv-09223-SVW-PLA, 2016 WL 79381, at *6 (C.D. Cal. Jan. 6,

22  2016) (internal quotation marks omitted and citations omitted).  Plaintiff seemingly demands that

23  defendant should prove "plaintiff's case for [her] or prove the amount in controversy beyond a

24  legal certainty," but that far exceeds defendant's burden.  *Harris v. KM Indus., Inc.*, 980 F.3d 694,

25  701 (9th Cir. 2020).  Indeed, the position taken by plaintiff in this regard is based upon a

26  misunderstanding of the threshold that defendant must satisfy.  Recently, the Ninth Circuit

27  clarified *Ibarra*'s holding regarding a removing defendant's burden when a plaintiff challenges

28  the amount in controversy on a motion to remand.  *See Perez*, 131 F.4th at 809.  In *Perez*, the

1  Ninth Circuit held that:

2       > The key to our holding in *Ibarra* was that the defendant had to submit
3       > evidence of the violation rate because its interpretation of the
        > allegations in the complaint *was unreasonable.*  Our decision
4       > suggests only that if a violation rate cannot be justified by the
        > allegations in the compliant, it must be justified by something else.
5       > We did not hold that violation rates drawn from *reasonable*
        > interpretations of the complaint must independently be supported by
6       > competent evidence.

7  *Id.* (emphasis in original).  Accordingly, although defendant *has* provided sufficient evidentiary

8  support to justify its calculations, it was not required to do so because defendant's assumptions

9  are "reasonably founded on the allegations of the complaint[.]"  *Arias v. Residence Inn by*

10 *Marriott*, 936 F.3d 920, 925 (9th Cir. 2019).  Therefore, the court concludes that the amount in

11 controversy as to the alleged meal period violations is $1,517,162.

12                    b.    *Rest Period Claim*

13      For the alleged rest period violations, defendant argues that $1,517,162 is in controversy.

14 (Doc. No. 1 at 27.)  To arrive at this number, defendant assumes that the putative class

15 experienced three out of five rest period violations per week, meaning a 60% violation rate, then

16 multiplies that number by the total number of workweeks that the putative class worked

17 throughout the statutory period, then multiplies that number by the average hourly pay rate for the

18 class.[5]  (*Id.*)  In challenging defendant's calculation as to the rest period claim, plaintiff advances

19 the same arguments as she does as to defendant's meal break calculations.  (Doc. No. 15 at 17.)

20      Here, plaintiff's complaint alleges that "Defendants' policy and practice was to not

21 authorize and permit Plaintiff and the Class to take rest periods in compliance with California

22 law."  (Doc. No. 1-4 at ¶ 17.)  It also alleges that defendant "sometimes, but not always, required

23 [plaintiff] to work in excess of four consecutive hours a day" without a rest break.  (*Id.*)  Courts

24 have deemed it to be reasonable to assume a violation rate up to 30% for rest period violations

25 when plaintiffs make "pattern and practice" allegations.  *Bryant v. NCR Corp.*, 284 F. Supp. 3d

26 ─────────────────
27 [5]  ((19,091 * 3) * $26.44 = $1,517,162).  (*Id.*)  As with the meal period violations, this number is supported by the calculation in the Minute declaration which multiplied the number of rest period-eligible shifts by 0.6 and then multiplied that number by the average hourly pay rate for
28 the putative class.  (Doc. No. 1-3 at 11.)

1147, 1151 (S.D. Cal. 2018) (finding a 30% violation rate reasonable); *Sanchez*, 2021 WL 2679057, at *5 (same); *Elizarraz*, 2019 WL 1553664, at *4 (finding a 25% violation rate reasonable).  This holds true even where a plaintiff alleges that a defendant "sometimes, but not always," violated rest break protections.  *Powell*, 2023 WL 6276578, at *4.

Therefore, the court concludes that defendant's 60% violation rate assumption is unreasonable in light of the allegations of plaintiff's complaint.  However, the court cannot simply apply $0 to a claim if it identifies a more reasonable assumption.  *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) ("In a circumstance like this, merely preferring an alternative assumption is not an appropriate basis to zero-out a claim; at most, it only justifies reducing the claim to the amount resulting from the alternative assumption.")  Accordingly, the court will apply the reasonable assumption of 30% in light of the allegations of plaintiff's complaint noted above.  *See Nguyen v. SMTC Mfg. Corp. of CA*, No. 24-cv-07394-JST, 2025 WL 2238033, at *5 (N.D. Cal. Aug. 6, 2025) (modifying defendant's rest break calculations to include a reasonable violation rate assumption based on the allegations in the plaintiff's complaint).  Therefore, after applying the reasonable assumption of a 30% violation rate, the court finds that amount in controversy as to plaintiff's rest period claim is $757,149.06.[6]

c.    *Overtime Claim*

Defendant argues that plaintiff's overtime wages claim places $1,517,162 into controversy.  (Doc. No. 1 at 26.)  To arrive at this number, defendant assumes that the class is entitled to two hours of unpaid overtime wages—meaning defendant applies a 40% violation rate—for the entire class period.[7]  (*Id.*)  In her motion to remand, plaintiff contends that it is unreasonable to assume that every putative class member worked enough hours to entitle them to

---

[6]  To arrive at this number, the court multiplies 5 by 0.3 to calculate the average number of rest period violations that the class purportedly suffered during the statutory period, and inputs it into defendant's original formula: (19,091 * 1.5) * 26.44.

[7]  Defendant employs the following formula: "($26.49/hour [average hourly wage earned by the Plaintiff during the Relevant Time Period] * 1.5 = $39.74/hour) * 38,182."  (*Id.*)  To arrive at 38,182, defendant multiplied the number of weeks that the putative class worked during the class period by two to account for the number of unpaid hours of overtime that the class would allegedly be entitled to.  (Doc. No. 1-3 at 11.)

1    overtime pay and that overtime work "persisted throughout" the entire statutory period. (Doc.

2    No. 15 at 15.) She further contends that defendant fails to declare how many of the putative class

3    members were full-time employees. (*Id.* 15–16.)

4          Plaintiff's complaint alleges that defendant "maintained a policy and practice" of failing

5    to pay all overtime wages for the overtime hours that the class "are regularly required to work."

6    (Doc. No. 1-4 at ¶ 15, 44.) In her complaint plaintiff further alleges that defendant provided

7    employees with "non-discretionary bonuses and other remuneration" that defendant failed to

8    incorporate when calculating the correct overtime rate of pay. (*Id.* at ¶ 15.)

9          District courts have concluded that a 25% violation rate—which amounts to

10   approximately one hour of unpaid overtime per week— is reasonable when a complaint makes

11   "policy and practice" allegations as is the case here. *See La Grow*, 2024 WL 3291589, at *4

12   (finding an assumption of a 25% violation rate to be reasonable); *Sanchez*, 2021 WL 2679057, at

13   *5 (concluding that a 20% violation rate was reasonable); *Ochoa v. Fred Loya Ins. Agency, Inc.*,

14   No. 24-cv-00151-JLT-BAM, 2024 WL 2014781, at *10 (E.D. Cal. May 7, 2024) (finding a 20%

15   violation rate to be reasonable in light of plaintiff's pattern and practice allegations). Moreover, it

16   is reasonable to assume a 20% violation rate where it is possible that not all putative class

17   members would be entitled to overtime wages. *Hender v. Am. Directions Workforce LLC*, No.

18   19-cv-01951-KJM-DMC, 2020 WL 5959908, at *8 (E.D. Cal. Oct. 8, 2020) (finding 20%

19   violation rate reasonable when plaintiff made pattern and practice allegations for their overtime

20   claim because the 20% rate accounted "for the possibility that not every putative class member

21   worked overtime.").

22         Based upon the above, the court concludes that a 20% violation rate is more reasonable

23   than defendant's 40% violation rate assumption. Accordingly, the court will apply a 20%

24   violation rate to plaintiff's overtime claim in determining the amount in controversy. *See*

25   *Wheatley v. MasterBrand Cabinets, LLC*, No. 18-cv-02127-JGB-SP, 2019 WL 688209, at *5

26   (C.D. Cal. Feb. 19, 2019) (lowering the violation rate to one hour per week—meaning a 20%

27   violation rate—of unpaid overtime based on plaintiff's "pattern and practice" allegations).

28   /////

1    Therefore, plaintiff's overtime wages claim renders an amount in controversy of $758,

2    581.[8]

3        d.    *Minimum Wage Claim*

4        As to plaintiff's minimum wages claim, defendant asserts that $2,022,882 is placed in

5    controversy.  (Doc. No. 1 at 25.)  To arrive at this number, defendant assumes that the class is

6    entitled to two hours of unpaid wages per week—amounting to a 40% violation rate—then

7    multiplies two by the number of workweeks that the putative class worked and their average

8    hourly rate.[9]  (*Id.*)  Since plaintiff seeks liquidated damages in connection with her minimum

9    wages claim, defendant multiplied that number by two to reach $2,022,882.  (*Id.*); (Doc. No. 1-4

10   at ¶ 37.)  Plaintiff argues that this calculation is unreasonable because defendant has failed to

11   show that all non-exempt employees will allege and attempt to recover on minimum wage claims.

12   (Doc. No. 15 at 15.)

13       In her complaint, plaintiff alleges that "[t]hroughout the statutory period, Defendants

14   failed to pay Plaintiff for all hours worked (including minimum wages and overtime wage)."

15   (Doc. No. 1-4 at ¶ 14.)  She further alleges that "Defendants knowingly failed to pay to Plaintiff

16   and the Class compensation for all hours they worked" so "Plaintiff and the Class are entitled to

17   recover minimum wages for all non-overtime hours worked[.]" (*Id.* at ¶¶ 32–33.)  Additionally,

18   plaintiff alleges that defendant "maintained a policy and practice of not paying Plaintiff and the

19   Class for all hours worked[.]" (*Id.* at ¶ 15.)  Finally, plaintiff asserts that she is entitled to recover

20   liquidated damages for defendant's failure to pay minimum wages.  (*Id.* at ¶ 37.)

21       "Where plaintiffs have not alleged subclasses or otherwise drawn relevant distinctions

22   between class members and alleged violations resulting from a 'policy and practice,' courts have

23   found a 20% violation rate reasonable." *Lewis v. Arvato Digital Servs., LLC*, No. 24-cv-02693-

24   AB-SHK, 2025 WL 1554331, at *3 (C.D. Cal. May 28, 2025) (citation omitted); *Manu v. Gat*

25   *Airline Ground Support, Inc.*, No. 23-cv-01988-TLN-AC, 2024 WL 5085312, at *3 (E.D. Cal.

26

27   [8]  To arrive at this number, the court divides defendant's original calculation by two.

28   [9]  Defendant employs the following formula:  "((19,091 * $26.49) * 2 = $1,011,441)." (*Id.*)

14

July 16, 2024) (finding a 20% violation rate to be reasonable). Therefore, in light of the policy and practice allegations appearing in plaintiff's complaint, defendant's assumption of two unpaid hours of minimum wages per week, a 40% violation rate, is unreasonable. Accordingly, the court will instead apply a 20% violation rate for plaintiff's minimum wages claim.

The court also concludes that defendant's use of the average hourly wage for the putative class for the minimum wages claim is unsupported. Despite defendant's contentions that it is reasonable to apply the average hourly pay rate for the class to this claim, in her complaint plaintiff explicitly seeks unpaid minimum wages. (Doc. No. 1-4 at ¶¶ 14, 19, 27, 33.) Therefore, defendant's argument that it is appropriate to calculate this claim according to the average hourly pay rate is unpersuasive. Accordingly, the court will also adjust defendant's original calculation to reflect the mean minimum wage in California throughout the statutory period – September 2020 to September 2024. (Doc. No. 1-4 at ¶ 23) (defining the putative class as "[a]ll persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the class is sent."); *Lewis*, 2025 WL 1554331, at *4 (adjusting defendant's minimum wage calculation to reflect the average minimum wage in California throughout the statutory period). "[T]he average minimum wage (rounded up to the nearest dollar) over the relevant period is $15.00." *Lewis*, 2025 WL 1554331, at *4 (calculating the average minimum wage in California between 2020 and 2024 and applying it to defendant's formula).

Adjusting defendant's calculation to reflect this number results in an amount in controversy as to plaintiff's minimum wages claim of $286,365.[10] Because plaintiff also seeks liquidated damages with respect to her minimum wages claim, the total amount in controversy for this claim is $572,730.

e.    *Waiting Time Penalties*

Defendant next contends that the allegations of plaintiff's complaint places $727,097.52 in waiting time penalties into controversy. (Doc. No. 18 at 21.) In its notice of removal, defendant

---

[10]  The court uses the following formula:  ((19,091 workweeks * $15.00 average minimum wage for the relevant statutory period) * 1 hour of unpaid minimum wages = $286,365).

1    initially assumed that all 115 employees are entitled to the full 30-day waiting time penalties.

2    (Doc. No. 1 at 28.)  However, in its opposition to plaintiff's motion to remand, defendant has

3    amended its original calculation and provides an additional declaration from Minute in support of

4    that modification.  (Doc. No. 18-1.)  In his second declaration, Minute states that he re-reviewed

5    the data that he relied upon in calculating the waiting time penalties amount, which revealed that

6    114 out of 115 employees were terminated more than 30 days before plaintiff filed her complaint.

7    (*Id.* at 2.)  The remaining employee was terminated 11 days before plaintiff filed her complaint.

8    (*Id.*)  Defendant has now adjusted its calculation to arrive at the number reflected above.[11]  In her

9    motion to remand, plaintiff contends that "Defendant made unfounded assumptions to inflate the

10   amount in controversy for Plaintiff and PCMs' sixth cause of action for failing to timely pay final

11   wages at termination."  (Doc. No. 15 at 19.)  Specifically, plaintiff argues that "nothing in the

12   record supports" assuming a 100% violation rate and the 30-day maximum waiting time

13   penalties.  (*Id.*)

14        In her complaint, plaintiff alleges that "Defendants willfully failed and refused to timely

15   pay Plaintiff and the Class at the conclusion of their employment all wages for all minimum

16   wages, overtime wages, meal period premium wages, and rest period premium wages."  (Doc.

17   No. 1-4 at ¶ 19.)  She further alleges that "Plaintiff and the Class are entitled to recover from

18   Defendants their additionally accruing wages for each day they were not paid, at their regular

19   hourly rate of pay, up to 30 days maximum pursuant to California Labor Code § 203."  (*Id.* at

20   ¶ 66.)

21        "Waiting time claims are derivative of other claims."  *Haro v. Target Corp.*, No. 25-cv-

22   00831-JGB-DTB, 2025 WL 1898257, at *7 (C.D. Cal. July 9, 2025).  Thus, for defendant to be

23   liable for the maximum 30-day waiting time penalties, a departed employee would only need to

24   have suffered a single wage and hour violation that remains unremedied.  *Chan v. Panera, LLC*,

25   No. 23-cv-04194-JLS-AFM, 2023 WL 6367677, at *3–4 (C.D. Cal. Sept. 28, 2023).  Thus, when

26   _____

27   [11]  For the 114 employees who would be entitled to the full 30-day penalty, defendant employs
     the following formula:  "114 * ($26.49 * 8) * 30 = $724,766.40."  (*Id.*)  Defendant uses the
     following formula for the employee who was terminated 11 days before the complaint was filed:

28   "1 * ($26.49 x 8) * 11 = $2,331.12.."  (*Id.*)

16

the court concludes that the amount in controversy for underlying labor code violations are reasonable, then it is also reasonable to assume the maximum 30-day penalty for all employees eligible for waiting time penalties. *Marquez v. Southwire Co., LLC*, No. 21-cv-00252-JGB-SP, 2021 WL 2042727, at *6 (C.D. Cal. May 21, 2021) ("If Defendant had a 'pattern and practice' of refusing to grant meal and rest breaks or pay class members for all hours worked, then it is likely that all or nearly all class members experienced wage statement and delay violations."). In fact, one court has concluded that it would be *unreasonable* to use an amount less than the 30-day maximum when, as here, the complaint (see Doc. No. 1-4 at ¶ 66) seeks penalties "up to a maximum of thirty (30) days." *Ortiz v. Sheraton Op. LLC*, No. 24-cv-05104-JAK-JPR, 2024 WL 4625951, at *8 (C.D. Cal. Oct. 30, 2024) ("[U]sing an amount less than the 30-day penalty maximum is unreasonable. The Complaint itself seeks penalties 'up to a maximum of thirty (30) days.'"). It is reasonable to assume the full 30-day penalty for the employees who departed more than 30 days before plaintiff filed her complaint because "there is nothing in the [c]omplaint to suggest that violations, once they happened, were ever remedied." *Chan*, 2023 WL 6367677, at *4. In fact, according to plaintiff this violation remains on-going because she expressly alleges in her complaint that defendant "continue[s] to fail to pay terminated Class Members, without abatement, all wages required" under the statute. (Doc. No. 1-4 at ¶ 63.) Moreover, "because Plaintiff does not allege or offer evidence that some class members worked part time, it is reasonable for Defendant to assume eight-hour shifts." *Wheatley*, 2019 WL 688209, at *6.

Accordingly, the court concludes that the amount in controversy as to waiting time penalties is $727,097.52.

    f.    *Reimbursement Claim*

Defendant next contends that plaintiff's expenditure reimbursement claim places $771,774.30 into controversy. (Doc. No. 1 at 27.) To arrive at this number, defendant calculates the number of months worked by the putative class throughout the statutory period, then multiplies it by the combined average monthly costs for computers, peripherals, smart home wireless assistants, electricity, internet services, and telephone services disclosed by the U.S

*/////*

17

1    Bureau of Labor Statistics.  (Doc. No. 1-4 at 3–4.)[12]  Plaintiff disputes this, contending that

2    defendant's number is unreasonable because defendant "arbitrarily [relies] upon national data"

3    despite "likely having records of reimbursed business expenses."  (Doc. No. 15 at 23–24.)

4         In her complaint, plaintiff alleges that defendant "wrongfully required Plaintiff and the

5    Class to pay expenses that they incurred in direct discharge of their duties for Defendants without

6    reimbursement."  (Doc. No. 1-4 at ¶ 18.)  These expenses include home internet and cellular

7    telephones.  (*Id.*)  Plaintiff's complaint also alleges that the class was "required to use personal

8    printers, computers, and office supplies without reimbursement."  (*Id.*)

9         Courts have permitted reliance upon the same kind of data that defendant uses here in

10   calculating the plaintiff's reimbursement claim.  *See Cocroft*, 2024 WL 3877274, at *10 (finding

11   reliance on Bureau of Labor Statistics Consumer Expenditure Survey data to be reasonable in

12   calculating the amount in controversy as to the plaintiff's reimbursement claim).  However, where

13   defendant's calculation falls short in this regard is that it assumes that the total monthly cost of

14   these expenditures was all attributable to unreimbursed work-related expenditures.  Accordingly,

15   the court will reduce this number to 50%, an assumption that other courts have found reasonable.

16   *See Gurzenski v. Delta Airlines, Inc.*, No. 21-cv-05959-AB-JEM, 2021 WL 5299240, at *4 (C.D.

17   Cal. Nov. 12, 2021) (lowering a defendant's assumption for the putative class monthly cell phone

18   use to 50% with respect to a reimbursement claim).  With this reduction applied, plaintiff's

19   business expenditure claim adds $385,887.15[13] to the total amount in controversy here.

20            g.    *Attorneys' Fees*

21        In its notice of removal, defendant includes plaintiff's attorneys' fees in its calculation.

22   (Doc. No. 1 at 29.)  Defendant contends that it is reasonable to assume that the 25% benchmark

23   commonly applied in wage and hour class actions is reasonable, adding $2,124,708 to the overall

24   amount in controversy.  (*Id.* at 30.)  In support of this argument, defendant cites to two cases in

25   _____

26   [12]  (4,598 months worked by the putative class * $167.85 average monthly cost for computers,
     peripherals, smart home assistants, wireless telephone services, and internet services = $771,744.)

27   (Doc. No. 1 at 27.)

28   [13]  To arrive at this number, the court divides defendant's original calculation by two.

1    which counsel for plaintiff in this case previously sought attorneys' fees up to 35% of the overall

2    common fund in similar wage and hour class action settlements.  (*Id.* at 29–30.)  In response,

3    plaintiff argues that the court should reject defendant's calculations because defendant fails to

4    establish how a 25% attorneys' fees recovery is a reasonable assumption.  (Doc. No. 15 at 25.)

5         "It is well established that a defendant may include attorneys' fees in calculating the AIC

6    pursuant to CAFA."  *Vigil v. DAK Res., Inc.*, No. 23-cv-00163-TLN-AC, 2023 WL 5917522, at

7    *4 (E.D. Cal. Aug. 11, 2023) (citation omitted).  "[T]he defendant must prove the amount of

8    attorneys' fees at stake by a preponderance of the evidence; we may not relieve the defendant of

9    its evidentiary burden by adopting a *per se* rule for one element of the amount at stake in the

10   underlying litigation."  *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 796 (9th Cir.

11   2018).

12        Above, the court has concluded that at least $4,718,606.73 has been placed into

13   controversy in this action, excluding attorneys' fees.  Therefore, to exceed the $5 million

14   threshold under CAFA, defendant must only show that plaintiff will likely recover $ 281,394.27

15   in attorneys' fees.  That amounts to approximately 6% in attorneys' fees.  The court concludes

16   that it is reasonable to assume that plaintiff will obtain at least 6% in attorneys' fees should she

17   prevail in this case.  *Demaria v. Big Lots Stores – PNS, LLC*, 23-cv-00296-DJC-CKD, 2023 WL

18   6390151, at *7 (finding the amount in controversy satisfied when other categories of damages

19   reached $4,485,622.74 and only $514,377.27 of attorneys' fees, or about 11.5%, need be

20   reasonable in order to reach the threshold).

21        For the reasons explained above, the court concludes that defendant has met its burden of

22   showing that the amount in controversy meets the CAFA threshold.  Accordingly, the court will

23   deny plaintiff's motion to remand this action and turn to address defendant's motion for judgment

24   on the pleadings.

25   **B.    Motion For Judgment on the Pleadings**

26        Defendant moves for judgment on the pleadings as to all of plaintiff's claims on the

27   grounds that they lack sufficient factual detail or are derivative of other claims.  (Doc. No. 7-1 at

28   14–33.)  In opposition, plaintiff contends that her claims are sufficiently pled and that she is not

1    required to reveal specific actions, workweeks, or occasions at this stage.  (Doc. No. 8 at 2.)

2         Defendant also moves to dismiss, or in the alternative, strike plaintiff's class allegations

3    pursuant to Federal Rule of Civil Procedure 12(f) due to plaintiff's failure to sufficiently allege

4    facts satisfying the Rule 23 class requirements.  (Doc. No. 7-1 at 11–14.)  In response, plaintiff

5    contends it would be premature to dismiss or strike class claims at this stage of this litigation.

6    (Doc. No. 8 at 12–13.)  The court will first address defendant's motion for judgment on the

7    pleadings as to plaintiff's eight causes of action, and then address defendant's motion to dismiss

8    or strike the class claims.

9         1.    Overtime Claim

10        Defendant argues that plaintiff's overtime claim should be dismissed because plaintiff has

11   failed to identify a workweek or instance where overtime was not paid, plaintiff does not allege

12   sufficient facts in support of the claim that she worked more than 40 hours per week, and has

13   failed to allege any facts that defendant had knowledge that plaintiff was performing overtime

14   work without pay.  (Doc. No. 7-1 at 17–18.)  In opposition, plaintiff claims that her overtime

15   claim is sufficiently pled because she has alleged specific tasks that she was required to perform

16   for which defendant did not pay her.  (Doc. No. 8 at 7.)  She further argues that although she "did

17   not assert specific calendar dates in the Complaint, Plaintiff alleged specific tasks and their

18   frequency to plausibly assert that she did work for Defendants that was not paid."  (*Id.*) (emphasis

19   omitted).  Plaintiff also contends that this claim is sufficiently pled because she alleged that

20   defendant failed to pay her at the correct overtime rate by omitting all remuneration that she was

21   rightfully owed.  (*Id.*)  Finally, plaintiff contends that she sufficiently plead a claim for overtime

22   wages because she alleged that she worked "in excess of 8 hours in a single workday" and "5

23   days in a workweek."  (*Id.*)

24        In her complaint, plaintiff alleges that she "was typically scheduled to work at least 5 days

25   in a workweek, and typically in excess of 8 hours in a single workday."  (Doc. No. 1-4 at ¶ 13.)

26   The complaint further alleges that plaintiff was "sometimes unable to clock into work, and [was]

27   required to contact technical support while off the clock to resolve the issue, uncompensated."

28   (*Id.* at ¶ 15.)  Plaintiff further alleges that she received non-discretionary bonuses and other

1    remuneration that defendant failed to incorporate when calculating the correct rate of her

2    overtime pay.  (*Id.*)[14]

3            The Ninth Circuit has held that:

> A plaintiff may establish a plausible claim by estimating the length
> of her average workweek during the applicable period and the
> average rate at which she was paid, the amount of overtime wages
> she believes she is owed, or any other facts that will permit the court
> to find plausibility.  Obviously, with the pleading of more specific
> facts, the closer the complaint moves toward plausibility.  However,
> like the other circuit courts that have ruled before us, we decline to
> make the approximation of overtime hours the *sine qua non* of
> plausibility for claims brought under the FLSA.  After all, most (if
> not all) of the detailed information concerning a plaintiff-employee's
> compensation and schedule is in the control of the defendants.

10   *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014), *as amended* (Jan. 26,

11   2015) (internal citations omitted).[15]  Since *Landers*, district courts in this circuit have applied

12   different standards in determining whether a plaintiff has plausibly alleged an overtime wage

13   claim under California law.  As one district court recently explained:

---

[14]  In support of her overtime and minimum wage claims plaintiff also alleges that defendant "systematically failed and refused to pay Plaintiff and the Class all such wages due, and failed to pay those wages twice a month[]" in violation of Labor Code § 204.  (*Id.* at ¶¶ 38, 48.)  Defendant characterizes plaintiff's allegations related to 204 as a derivative claim of her overtime and minimum wage claims.  (Doc. No. 7-1 at 15.)  Defendant further contends that plaintiff's claim pursuant to § 204 should be dismissed because:  (1) § 204 does not create a private right of action; and (2) plaintiff "does not allege that Defendant failed to provide timely and regular paychecks; instead, it alleges only that Defendant failed to pay all wages owed to Plaintiff."  (*Id.* at 15–16.)  Plaintiff does not address this argument in her opposition.  (Doc. No. 8.)  The court agrees that "[t]here is nothing in section 204 . . . that indicates, in clear understandable, unmistakable terms, that a private right of actions exists for violations of section 204."  *Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, No. 23-cv-02802-MCS-JC, 2023 WL 5246264, at *8, n.4 (C.D. Cal. Aug. 14, 2023) (internal quotation marks and citation omitted).  However, plaintiff's allegations that defendant violated § 204 are based upon her minimum wage and overtime claims.  (*See* Doc. No. 1-4 at ¶¶ 38, 48.)  Therefore, the court will dismiss plaintiff's § 204 claim to the extent that it is alleged as a separate cause of action.  *Barrett v. Saint-Gobain Glass Corp.*, No. 24-cv-01844-FWS-DFM, 2024 WL 4828715, at *13 (C.D. Cal. Nov. 18, 2024) (granting the defendant's motion to dismiss "[t]o the extent Plaintiffs allege a claim under section 204 as part of their unpaid minimum and overtime wage claims.").

[15] The Ninth Circuit's standard for plausibly alleging an overtime claim under the Fair Labor Standards Act has routinely been found applicable to the labor code section governing overtime wages under California law.  *Boyack v. Salon Mgmt. Corp.*, No. 18-cv-01233-AGD-FM, 2019 WL 1744855, at *4 (C.D. Cal. Feb. 11, 2019) (collecting cases), *aff'd sub nom. Boyack v. Regis Corp.*, 812 F. App'x 428 (9th Cir. 2020).

1
2
3
4
5
6
7

District courts are split on the practical implication of the Ninth Circuit's opinion in *Landers*. Some courts applying *Landers* have required plaintiffs to plead facts identifying a specific calendar week in which they were denied overtime pay or minimum wages. Other courts have declined to read *Landers* as requiring such specificity. Instead, those courts required plaintiffs to provide some material details to give rise to a plausible inference that the plaintiff was not paid minimum wage or overtime during at least one workweek. A plaintiff may accomplish this "by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility."

8    *Picou v. Tracy Logistics LLC*, No. 24-cv-00526-DC-JDP, 2025 WL 1248729, at *8 (E.D. Cal.

9    Apr. 30, 2025) (internal citations omitted). The undersigned has previously aligned with "the

10   decisions finding that *Landers* does not impose a heightened pleading standard on wage-and-hour

11   claims and that a plaintiff need not allege, for instance, specific dates in their complaint."

12   *Benyamin v. Topgolf Payroll Servs., LLC*, No. 23-cv-00303-DAD-SCR, 2025 WL 745827, at *6

13   (E.D. Cal. Mar. 6, 2025). The undersigned will continue to follow that reasoning in this case.

14           Here, plaintiff alleges that "[a]t all time relevant hereto, Defendant failed to pay Plaintiff

15   and the Class overtime compensation for the hours they have worked in excess of the maximum

16   hours permissible by laws[.]" (Doc. No. 1-4 at ¶ 44.) In her complaint plaintiff further alleges

17   that "[a]t all times relevant hereto, Plaintiff and the Class have worked more than eight hours in a

18   workday, as employees of Defendants." (*Id.* at ¶ 43.) However, such general allegations are

19   insufficient to plausibly state a claim that there was at least one week where plaintiff did not earn

20   overtime pay. *Byrd v. Masonite Corp.*, No. 16-cv-00035-JGB-KK, 2016 WL 756523, at *4 (C.D.

21   Cal. Feb. 25, 2016) (internal quotation marks and citations omitted) ("In the employment class

22   action context, courts have repeatedly rejected similar allegations that simply recite the statutory

23   language setting forth the elements of the claim, and then slavishly repeat the statutory language

24   as to the purported factual allegations."); *Tavares v. Cargill Inc.*, No. 18-cv-00792-DAD-SKO,

25   2019 WL 2918061, at *4 (E.D. Cal. July 8, 2019) (finding that the allegation "'During the

26   relevant time period, plaintiff and other class members worked in excess of eight (8) hours in a

27   day, and/or in excess of forty (40) hours in a week' . . . insufficient even under the most liberal

28   pleading standard.").

22

1    However, plaintiff also alleges that she "was typically scheduled to work at least 5 days in

2    a workweek, and typically in excess of 8 hours in a single workday.". (Doc. No. 1-4 at ¶ 13.)  In

3    her complaint plaintiff also alleges that defendant "maintained a policy and practice of not paying

4    [plaintiff] for all hours worked, including all overtime wages.  [Plaintiff was] sometimes unable

5    to clock into work, and [was] required to contact technical support while off the clock to resolve

6    the issue, uncompensated."  (*Id.* at ¶ 15.)[16]  Plaintiff contends that these allegations sufficiently

7    plead her overtime wages claim and cites to an unpublished Ninth Circuit opinion in support of

8    this argument.  (Doc. No. 8 at 7) (citing *Boon v. Cannon Bus. Sols., Inc.*, 592 F. App'x 631, 632

9    (9th Cir. 2015) (concluding that the plaintiff satisfied his burden under *Landers* because he

10   "identified tasks for which he was not paid and alleged that he regularly worked more than eight

11   hours in a day and forty hours in a week.")).  Plaintiff has clearly alleged that she worked enough

12   hours to entitle her to overtime wages.  However, merely alleging that the plaintiff "'regularly

13   worked hours over forty in a week and [was] not compensated for such time' . . . . without more"

14   is insufficient to state a claim for overtime wages.  *Turner v. LTF Club Mgmt. Co.*, No. 20-cv-

15   00046-KJM-JDP, 2022 WL 1018498, at *4 (E.D. Cal. Apr. 5, 2022).  Thus, the sufficiency of this

16   allegation turns upon whether the task plaintiff alleges she engaged in without overtime

17   compensation is sufficiently pled.

18       In *Turner*, the plaintiff alleged that he was required to respond to business-related

19   inquiries and assist customers during off-the-clock work without overtime compensation.  2022

20   WL 1018498, at *5.  He also provided a specific time range during which defendant failed to

21   compensate him for overtime.  *Id.*  The district court there ultimately concluded that the plaintiff's

22   overtime allegations did not rise to the level of plausibility.  *Id.* at *6.  In reaching this conclusion,

23   the court reasoned that:

24   /////

25

---

26   [16]  In her opposition, plaintiff contends that she alleged certain discrete tasks that defendant
     forced her to complete as off-the-clock work "including cleaning after clocking out of work and

27   arriving to work early to prepare the truck, gather tools, and set up the bay" (Doc. No. 8 at 3),
     however, the complaint makes no such allegations in connection with her overtime claim.  *See*

28   (Doc. No. 1-4 at ¶¶ 15, 30–48.)

1
2
3
4
5
6

> Turner merely provides a description of general work duties common to many workplaces. Nowhere does he attempt to provide even a general description of the nature of the business in which defendants are engaged, saying only that defendants are "employer[s] whose employees are engaged throughout the State of California, including the County of Sacramento." Turner does not provide any meaningful detail to give a sense of when the alleged violations happened or how often they happened, saying only "during the relevant time period." Even if the court were to consider Turner's "example" of June through August 2018, it is not clear whether these violations happened once a month or every workday.

7   *Id.* (alteration in original) (internal citations omitted).

8       Other courts that have adopted the same reading of *Landers* as the undersigned has are in

9   accord with this reasoning. *See Rubalcaba v. R&L Carriers Shared Servs., L.L.C.*, No. 23-cv-

10  06581-HSG, 2024 WL 1772863, at *9–10 (N.D. Cal. Apr. 23, 2024) (finding plaintiff's

11  allegations that they completed "deliveries and pick-ups and [communicated] with supervisors to

12  provide work-related updates . . . . simply too bereft of facts to push the allegations concerning

13  his unpaid overtime and minimum wage claims from the realm of the possible into the

14  plausible."); *Lewis v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. 24-cv-01108-DC-DMC, No. 24-

15  cv-01108-DC-DMC, 2025 WL 2299846, at *5 (E.D. Cal. Aug. 8, 2025) (finding the plaintiff's

16  allegations that managers, vendors, and other employees "constantly called and texted Plaintiff

17  about work related tasks while Plaintiff was off the clock" insufficient because it omitted "key

18  information from her complaint, such as sufficient detail about the length and frequency of [her]

19  unpaid work to support a reasonable inference that [she] worked more than forty hours in a given

20  week."); *Picou*, 2025 WL 1248729, at *5 ("While Plaintiff identifies uncompensated tasks he and

21  the alleged class engaged in while off-the-clock, Plaintiff does not provide an estimate of the

22  amount of time he spent on said tasks or how often those tasks were undertaken."). The court

23  finds these decisions to be instructive in resolving the issue presented here.

24      As in those cases, plaintiff's allegation of a specific task does not push her claim into

25  plausibility. To be specific, plaintiff alleges that she was "sometimes" unable to clock into work

26  and was required to contact technical support to resolve this issue without being provided

27  overtime compensation. (*Id.* at ¶15.) While the court will not demand that plaintiff "allege with

28  mathematical precision, the amount of overtime compensation owed by the employer, [she]

24

1    should be able to allege facts demonstrating there was at least one workweek in which [she]

2    worked in excess of forty hours and [was] not paid overtime wages." *Landers*, 771 F.3d at 646

3    (internal quotation marks omitted). "Sometimes" falls short of alleging such key facts including

4    the length of time she spent on this task or the frequency with which it occurred. *See Lewis*, 2025

5    WL 2299846, at *5 (finding allegation that plaintiff "on average 'worked about two (2) to eight

6    (8) hours off the clock each week answering work related calls'" did not sufficiently allege at

7    least one workweek in which plaintiff worked in excess of forty hours without overtime wages).

8    Moreover, as in *Turner*, plaintiff here does not even allege what her job duties entailed nor the

9    business in which defendant operates.

10          Additionally, plaintiff's allegation that defendant "failed to incorporate" her non-

11   discretionary bonuses or remuneration when calculating the correct rate of overtime pay does not

12   describe the nature of the bonuses or remuneration to which plaintiff claims she was entitled, nor

13   does it allege facts sufficient for the court to conclude when plaintiff received any such bonuses

14   or remuneration. *See Mendieta v. Williams Scotsman, Inc.*, No. 24-cv-02090-MWF-SP, 2025 WL

15   104095, at *6 (C.D. Cal. Jan. 15, 2025) (finding the plaintiff's allegation that he was not paid

16   "non-discretionary remuneration, including for example incentives and bonuses" insufficient to

17   state a claim for overtime wages because it failed to state when he was entitled to bonuses or how

18   often he was entitled to them); *Avalos v. Amazon.com LLC*, 18-cv-00567-DAD-BAM, 2018 WL

19   3917970, at *4 (E.D. Cal. Aug. 14, 2018) (dismissing the plaintiff's overtime claim which

20   generally alleged that defendant had a policy and practice of not paying overtime compensation

21   and excluding bonuses from overtime wages because the complaint failed to describe the nature

22   of the bonus or allege that the plaintiff was actually paid the bonus); *Bernardo v. Carl's Jr. Rests.*

23   *LLC*, 25-cv-00826-CAS-PVC, 2025 WL 1755136, at *7 (June 23, 2025) (finding plaintiff's

24   allegation that when she "earned non-discretionary bonuses and other remuneration, [d]efendants

25   failed to incorporate all remuneration when calculating the correct overtime rate of pay" standing

26   alone was insufficient because plaintiff failed to plead whether she earned any such bonus, when

27   they were earned, and whether plaintiff worked overtime in those periods); *de Dios v. Gerard*

28   *Roof Prods., LLC*, No. 18-cv-01163-SJO-FFM, 2018 WL 6016952, at *4 (C.D. Cal. Sept. 4,

2018) (finding that plaintiff had insufficiently pled that a discretionary bonus was omitted from his overtime pay rate for a specific period because the plaintiff failed to allege "sufficient facts regarding the nature of the bonus, the specific hours worked, and the amount owed.").

Therefore, the court concludes that the factual allegations of plaintiff's complaint fail to plausibly allege a claim for unpaid overtime wages. Accordingly, the court will grant defendant's motion for judgment on the pleadings as to plaintiff's overtime claim.

### 2. Minimum Wage Claim

Defendant next contends that plaintiff's minimum wage claim should be dismissed because plaintiff has failed to allege an instance or a workweek where she was not paid minimum wages, plaintiff does not identify her hourly pay rate, how much time she purportedly worked off the clock, and fails to state facts about her schedule during the workweek when a violation purportedly occurred. (Doc. No. 7-1 at 14–15.) In response, plaintiff contends that defendant demands too much of her at the pleading stage of this litigation. (Doc. No. 8 at 7.)

In her complaint, plaintiff alleges that defendant "maintained a policy and practice of not paying Plaintiff and the Class for all hours worked[.]" (Doc. No. 1-4 at ¶ 15.) In that complaint it is further alleged that because of defendant's "unlawful failure to pay additional compensation to [plaintiff] for [her] non-overtime hours worked without pay" plaintiff suffers damages for unpaid wages in excess of "the jurisdictional minimum of this Court[.]" (*Id.* at ¶ 35.) Plaintiff also alleges that defendant did not compensate her at least minimum wages when she had to communicate with technical support in instances where she was unable to clock in for work. (*Id.* at ¶ 15.)

The standard for pleading overtime wages set forth in *Landers* also applies to minimum wage claims. *Guerra v. United Nat. Foods, Inc.*, 19-cv-01684-BLF, 2019 WL 13203781, at *5 (N.D. Cal. Nov. 8, 2019). Therefore, the court also concludes that plaintiff's minimum wage

/////

/////

/////

/////

1    claim is insufficiently pled for the same reasons related as to her overtime claim. [17]    Accordingly,

2    the court will grant defendant's motion for judgment on the pleadings as to plaintiff's minimum

3    wage claim.

4        3.    Meal Premium and Rest Break Claims

5        Defendant argues that plaintiff's meal break claim should be dismissed for, among other

6    reasons, plaintiff's failure to allege a workweek or instance where she was denied a meal break,

7    how defendant's policy or practice prevented her from taking meal breaks, and because her

8    allegation that defendant failed to inform her of her right to take a meal break is conclusory.

9    (Doc. No. 7-1 at 18–20.)  As to the rest break claim, defendant similarly contends that plaintiff

10    has failed to allege any instance or workweek where she was denied a rest break, nor did she

11    allege facts showing how defendant prevented the taking of rest breaks, and failed to allege facts

12    of a policy, supervisor, or an attempt by her to take a rest break that was prohibited by defendant.

13    (Doc. No. 7-1 at 20–21.)

14        Plaintiff responds by arguing that her meal and rest period claims are sufficiently pled

15    because her complaint alleges that defendant failed to inform her of her right to meal or rest

16    breaks, defendant's policy and practice was to withhold breaks, that her "meal periods and rest

17    breaks were necessarily cut short or prevented altogether," and that defendant's violations were

18    /////

19    _____

20    [17]  Even if the court concluded that the above-mentioned task was sufficiently pled, plaintiff's
    minimum wage claim would still fail because it omits plaintiff's hourly pay rate and the

21    prevailing minimum wage during her employment by defendant.  Without such information, the
    court cannot adduce whether those instances in which she was purportedly unable to clock in

22    caused plaintiff's pay to fall below the minimum wage threshold.  *See Barajas v. Blue Diamond
    Growers Inc.*, No. 20-cv-00679-JLT-SKO, 2023 WL 2333548, at *13 (E.D. Cal. Mar. 2, 2023)

23    ("Although Plaintiffs estimated they took 24 to 30 minutes total each week on such tasks,
    Plaintiffs again failed to provide any information regarding their hourly pay rates, such that the

24    Court may determine the identified tasks caused their hourly pay to fall below the mandated
    minimum wage."); *Lewis*, 2025 WL 2299846, at *5 (finding that the plaintiff failed to state a

25    cognizable claim for minimum wages because she did not "provide any information regarding her
    hourly pay rates or the prevailing minimum wage during the relevant time period in support of

26    her claim for failure to pay minimum wages."); *Gordon v. Abbott Vascular Inc.*, No. 22-cv-

27    01438-MCS-SHK, 2023 WL 2627739, at *3 (C.D. Cal. Jan. 30, 2023) ("Plaintiff fails to allege
    the amount she was paid and the amount she expected to receive.  The failure to allege such basic

28    facts casts doubt on the plausibility of Plaintiff's minimum wages claim.").

                                                27

1    willful. (Doc. No. 8 at 3, 8.)  She also claims that defendant's violations were willful, and thus

2    that defendant should have paid the meal and rest period premiums.  (*Id.*)

3        "The requirement in *Landers* that a plaintiff must plead a specific instance of alleged

4    wage and hour violations also applies to claims about missed meal and rest periods."  *Dutra v.*

5    *J.R. Simplot Co.*, No. 22-cv-01054-TLN-CKD, 2023 WL 113846, at *4 (E.D. Cal. Jan. 5, 2023)

6    (citation omitted).  "Typically, courts have found such a claim sufficiently pled so long as the

7    plaintiff has alleged facts supporting a plausible inference, rather than merely alleging a bare

8    violation of the statute or parroting the statutory language."  *Meraz-Valencia v. Westlake Royal*

9    *Roofing, LLC*, No. 22-cv-00491-DAD-AC, 2023 WL 2541852, at *2 (E.D. Cal. Mar. 16, 2023)

10   (internal quotation marks and citations omitted).

11       Here, as with plaintiff's overtime claim, the complaint contains only conclusory

12   allegations of meal and rest break violations.  For example, plaintiff alleges in general fashion

13   that defendant "regularly failed" to provide "meal periods as required by California law" and that

14   defendant "sometimes, but not always, required [plaintiff] to work" over four hours without a rest

15   break or five hours without a meal break.  (Doc. No. 1-4 at ¶¶ 16, 17, 51, 55.).  It also alleges that

16   defendant had a "policy and practice" of withholding meal and rest breaks.  (*Id.* at ¶¶ 16–17.)

17   Such general allegations fall short of citing a specific instance in which defendant failed to

18   provide plaintiff with a meal break.  *Reyes v. Five Diamond Cold Storage, Inc.*, No. 24-cv-00028-

19   JLT-SAB, 2024 WL 3011123, at *5 (E.D. Cal. June 11, 2024) (finding general allegations that

20   plaintiff was "not afforded timely meal periods as required by California law, since they were

21   routinely required to work five hours or more without [a meal break or premium compensation]"

22   and general allegations about defendant's policies that "failed to provide employees . . . timely

23   meal periods" were insufficient to state a cognizable meal break claim); *Yorba v. Gov't Emps. Ins.*

24   *Co.*, No. 24-cv-00031-GPC-VET, 2024 WL 3448090, at *5 (S.D. Cal. July 17, 2024) (finding

25   "conclusory statements that Defendant's 'policy, practice, and/or procedure' failed to permit

26   required rest and meal periods or pay for those missed rest and meal breaks at the correct regular

27   rate of pay" to be insufficiently pled).  Indeed, in this regard, the allegations of plaintiff's

28   complaint are far more general than claims that other courts have dismissed as insufficiently pled.

1    *See Edwards v. Costco Wholesale Corp.*, 21-cv-00716-MWF-KK, 2021 WL 3130043, at \*4–5

2    (C.D. Cal. July 23, 2021) (finding plaintiff's meal and rest break claims insufficiently pled even

3    though the complaint stated specific causes for their alleged missed breaks).

4           Furthermore, plaintiff's allegation that defendant failed to advise plaintiff of her right to a

5    meal or rest break, without more, is insufficient to state a claim. *Bernardo*, 2025 WL 1755136, at

6    \*9 (recognizing that while the assertion that defendant failed to advise plaintiff of their right to

7    meal and rest break claims does not serve as a basis for dismissal, such an allegation is "not a

8    basis for a claim on its own."); *Bellinghausen v. Tractor Supply Co.*, No. 13-cv-02377-JSC, 2013

9    WL 6057847, at \*3 (N.D. Cal. Nov. 15, 2013) (finding the bare assertion that defendant failed to

10   advise plaintiff of the right to a meal break is insufficient to state a claim). Nor do plaintiff's

11   general allegations that defendant willfully violated the California Labor Code save her factually

12   deficient allegations. *Benge v. Off. Depot, LLC*, No. 24-cv-00749-DJC-SCR, 2025 WL 373501,

13   at \*6 (E.D. Cal. Feb. 3, 2025) ("Plaintiff's general allegations that Defendants intentionally and

14   willfully failed to authorize or permit or impeded and discouraged Plaintiff and the other class

15   members from taking their meal and rest periods fail to sufficiently allege how Defendants

16   prevented Plaintiff from taking the required breaks.") (internal quotation marks and citations

17   omitted).

18          Finally, the allegation that plaintiff's "meal and rest periods were necessarily cut short or

19   prevented altogether," without some factual detail describing the circumstances under which her

20   breaks were cut short, does not rise to the level of plausibility. *Hernandez v. Houdini, Inc.*, No.

21   16-cv-01825-DOC-JCG, 2017 WL 8223987, at \*8 (C.D. Cal. Mar. 21, 2017) ("Plaintiff fails to

22   allege who it was that cut short or cancelled his meal or rest periods, on what basis they were cut

23   short and cancelled, who ordered Plaintiff and/or others to falsify their time cards, or any other

24   details that make it plausible—as opposed to conceivable—that either Defendant failed to provide

25   required meal and rest periods"); *cf. Mish v. TForce Freight, Inc.*, No. 21-cv-04094-EMC, 2021

26   WL 4592124, at \*4 (N.D. Cal. Oct. 6, 2021) (finding plaintiff's allegation that her meal and rest

27   periods were cut short was sufficiently pled since plaintiff alleged a specific workweek when her

28   breaks were interrupted).

Accordingly, due to the noted pleading deficiencies, the court concludes that plaintiff has failed to state a cognizable claim for meal or rest break violations.  Therefore, the court will grant defendant's motion for judgment on the pleadings as to those claims.

### 4. Business Expenditure Claim

Defendant contends that plaintiff's reimbursement claim should also be dismissed because plaintiff has failed to allege an instance when business costs were incurred and not reimbursed, fails to explain what personal costs were incurred and how they related to her duties, and does not state that defendant knew or had reason to know of the expenses required to be incurred yet willfully failed to reimburse plaintiff for them upon request.  (Doc. No. 7-1 at 23–24.)  Plaintiff avers that this claim is sufficiently pled because she "alleges the items that Defendant required Plaintiff and the class to purchase or use included home internet, cellular telephones, personal printers, computers, and office supplies that were essential to perform necessary work, but which Defendant failed to provide reimbursement."  (Doc. No. 8 at 9.)  She further contends that this claim is adequately pled because she has alleged both that the use of such equipment was "necessary" to complete her work and "that these expenses were incurred in direct discharge of their duties[.]"  (*Id.*)

In her complaint, plaintiff alleges that defendant "wrongfully required [her] to pay expenses that [she] incurred in direct discharge of [her] duties" without reimbursement, including "personal printers, computers, and office supplies[.]"  (Doc. No. 1-4 at ¶ 18.)  She further alleges that she did not "receive all reimbursements for her home internet and cellular telephones reimbursements."  (*Id.*)

To state a cognizable claim for failure to reimburse business expenditures, plaintiff must allege that:  "(1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary." *Gallano v. Burlington Coat Factory of Cal.*, 67 Cal. App. 5th 953, 960 (2021).  "In addition, the employer must either know or have reason to know that the employee has incurred [the] expense." *Kajberouni v. Bear Valley Cmty. Servs. Dist.*, 641 F. Supp. 3d 888, 893 (E.D. Cal.

30

Nov. 21, 2022) (alteration in original) (internal quotation marks and citation omitted). However, plaintiffs asserting such a claim need not "provide a detailed list of every business expense incurred, "when they were incurred, the amount, or whether they were necessary and incurred in direct consequence of the discharge of his duties." *Saunders v. Ameriprise Fin. Servs., Inc.*, No. 18-cv-10668-MWF-AFM, 2019 WL 4344296, at *4 (C.D. Cal. Mar. 19, 2019) (internal quotation marks omitted).

Here, plaintiff's complaint fails to explain why plaintiff's personal printer, computer, office supplies, cellphone, and home internet usage were required for her job—"or even, as noted above, what [her] job is." *Perez v. DNC Parks & Resorts at Asilomar, Inc.*, No. 19-cv-00484-DAD-SAB, 2019 WL 5618169, at *10 (E.D. Cal. Oct. 31, 2019). Since plaintiff omits this basic information from her complaint, her claim fails as to the second and third elements necessary to state a business expenditure reimbursement claim. *Barrett*, 2024 WL 4828715, at *12 (reasoning that plaintiff's reimbursement claim failed on second and third elements because they failed to allege any information regarding their job duties or the nature of their expenses); *Sagastume v. Psychemedics Corp.*, No. 20-cv-06624-DSF-GJS, 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) (finding that the plaintiff's claim failed because it "failed to provide sufficient information about her job and duties for the Court to infer why she would require the use of her vehicle and cell phone for work-related purposes, or what supplies she needed to purchase."); *cf. Kajberouni*, 641 F. Supp. 3d at 894 (finding plaintiff's business expenditure claim to be sufficient where it alleged that plaintiff purchased specific items and specific instances in which those items were used to discharge plaintiff's job duties). Moreover, "[p]laintiff's allegation that the expenses [she] incurred were 'necessary' without further factual support is conclusory." *Magana v. Int'l Paper Co.*, No. 24-cv-08867-AH-MAR, 2025 WL 819716, at *3 (C.D. Cal. Jan. 30, 2025). Finally, plaintiff does not address defendant's contention that she has failed to allege that defendant had knowledge of these expenses incurred by her. "Plaintiff conceded this argument by failing to oppose it." *Kocontes v. Orange Cnty. Sheriff's Dep't*, No. 19-cv-01968-PSG-PLA, 2020 WL 9071688, at *4 (C.D. Cal. Dec. 30, 2020), *aff'd*, No. 21-55074, 2022 WL 42471 (9th Cir. Jan. 5, 2022). Accordingly, the court will grant defendant's motion for judgment on the

1    pleadings as to plaintiff's reimbursement claim.

2           5.    Final Wages, Wage Statement, and UCL Claims

3           Defendant argues that plaintiff's final wages, wage statement, and UCL claims must be

4    dismissed because, among other reasons, they are all derivative of her other insufficiently pled

5    claims. (Doc. No. 7-1 at 24, 26, 28.) In response, plaintiff does not dispute defendant's

6    contention and argues that these three claims are sufficiently pled, in relevant part, because she

7    has adequately alleged her wage and break claims. (Doc. No. 8 at 10–11.)

8           Because the court has concluded that plaintiff's minimum wage, overtime, meal period,

9    and rest break claims are all insufficiently pled, it is appropriate to dismiss the concededly

10   derivative wage statement, final wages, and UCL claims as well. *See Garza v. WinCo. Holding,*

11   *Inc.*, No. 20-cv-01354-JLT-HBK, 2022 WL 902782, at *15 (E.D. Cal. Mar. 28, 2022) (dismissing

12   plaintiff's final wages, wage statement, and UCL claims because they were entirely derivative of

13   insufficiently pled overtime, minimum wage, and rest period violation claims); *Valenzuela v.*

14   *Everi Games Inc.*, No. 24-cv-00257-PA-JPR, 2024 WL 5681957, at *4 (C.D. Cal. Feb. 15, 2024)

15   (dismissing wage statement and UCL claims as being derivative of insufficiently pled claims).

16   However, the court also notes that to the extent plaintiff's inaccurate wage statements claim

17   hinges upon defendant's alleged failure to include its address on her wage statements, (Doc. No.

18   1-4 at ¶ 20), "[p]laintiff still does not show how a missing address has led to injury or that

19   Defendant omitted the address willfully and knowingly." *Garcia v. Williams Scotsman, Inc.*, No.

20   24-cv-02977-PSG-MRW, 2024 WL 3811267, at *8 n.2 (C.D. Cal. Aug. 13, 2024). Moreover,

21   plaintiff's waiting time penalties claim "fails to provide even a modicum of factual detail, such as

22   the date of her termination [or resignation], the wages earned, and the wages expected[.]" *Wilcox*,

23   2023 WL 5246264, at *7. Accordingly, the court will grant defendant's motion for judgment on

24   the pleadings with respect to plaintiff's final wages, wage statement, and UCL claims.

25          6.    Dismiss or Strike Class Allegations Pursuant to Rule 12(f)

26          In addition to its motion for judgment on the pleadings, defendant requests that the court

27   dismiss or, in the alternative, strike plaintiff's class claims. (Doc. No. 7-1 at 11.) Defendant

28   contends that this is appropriate because the complaint fails to allege sufficient facts supporting

1  the commonality requirement for class actions and there is also no factual basis for any

2  suggestion that plaintiff's experiences are representative of the entire putative class.  (*Id.* at 11–

3  13.)  Alternatively, defendant requests that the court strike plaintiff's class allegations because

4  they fail to establish that plaintiff's experiences are illustrative of the non-exempt California

5  employees.  (*Id.* at 13.)  In response, plaintiff urges the court to deny defendant's motion to strike

6  as premature because "discovery has not commenced."  (Doc. No. 8 at 13.)

7      Class claims may be dismissed at the pleading stage if the complaint lacks a sufficient

8  basis upon which the court may conclude that they are plausibly alleged.  *Mish*, 2021 WL

9  4592124, at *8; *Zamora v. Penske Truck Leasing Co., L.P.*, No. 22-cv-02503-ODW-MRW, 2021

10  WL 809403, at *3 (C.D. Cal. Mar. 3, 2021) ("[C]lass allegations may sometimes be dismissed at

11  the pleading stage.").

12      Here, the court concludes that dismissal of plaintiff' class allegations is appropriate at this

13  time.  Plaintiff's individual claims which underlie the class allegations are insufficiently pled.  As

14  a result, there is no basis upon which the court can conclude that the alleged violations were

15  suffered on a class-wide basis.  Furthermore, "plaintiff does not allege [her] job title, [her] job

16  description or duties, the dates of [her] employment, [or] the physical location(s) where [she]

17  worked[.]"  *Perez*, 2019 WL 5618169, at *12.

18      Accordingly, the court will dismiss plaintiff's class claims and deny defendant's motion to

19  strike as having been rendered moot.

20      7.    Leave to Amend

21      Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

22  P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

23  amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

24  Reasons "such as undue delay, bad faith or dilatory motive . . .  repeated failure to cure

25  deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

26  leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Dismissal without leave to amend is

27  proper if it is clear that "the complaint could not be saved by any amendment."  *Intri-Plex Techs.*

28  *v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citation omitted); *see also Ascon Props., Inc.*

1  *v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the

2  amendment of the complaint . . . constitutes an exercise in futility . . . ."). A district court "should

3  grant leave to amend even if no request to amend the pleading was made, unless it determines that

4  the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and*

5  *Liehe, Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

6      In their opposition to the pending motion, plaintiff requests leave to amend. (Doc. No. 49

7  at 26.) The court observes that several of the pleading deficiencies identified in this order may be

8  capable of being cured by additional and more detailed allegations. Therefore, the court will

9  grant plaintiff leave to amend her complaint. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d

10 1032, 1041 (9th Cir. 2015) ("It is black-letter law that a district court must give plaintiffs at least

11 one chance to amend a deficient complaint, absent a clear showing that amendment would be

12 futile.").

13                                    **CONCLUSION**

14     For all of the reasons explained above,

15     1.  Defendant's motion for judgment on the pleadings (Doc. No. 7) is GRANTED IN

16          FULL, with leave to amend;

17     2.  Within twenty-one (21) days from the date of entry of this order, plaintiff shall file

18          either a first amended complaint, if she can do so in good faith, or a notice of her

19          intent not to do so; and

20     3.  Plaintiff's motion to remand (Doc. No. 15) is DENIED.[18]

21     IT IS SO ORDERED.

22  Dated:  **September 30, 2025**

23                                    DALE A. DROZD
                                      UNITED STATES DISTRICT JUDGE
24

25

26

27  _____

28  [18] Defendant has also filed a motion to consolidate this and another case pending before the
    undersigned. (Doc. No. 21.) That motion will be resolved by way of separate order.

                                          34